## HARRIS v. WARSHAWSKY.

No. 65, Docket 21770.

United States Court of Appeals
Second Circuit.

Argued Oct. 5, 1950.

Decided Oct. 23, 1950.

Herman G. Robbins, of Brooklyn, N. Y., for petitioner-appellant.

Martin W. Kramer, of New York City, for respondent- appellee.

Before L. HAND, Chief Judge, SWAN and CLARK, Circuit Judges.

CLARK, Circuit Judge.

On April 10, 1935, Lillian Warshawsky filed a voluntary petition in bankruptcy

in the United States District Court for the Eastern District of New York. She was adjudicated a bankrupt the same day. On August 15, 1935, the Superintendent of Banks of the State of New York filed a proof of claim on a judgment obtained by him against the bankrupt in 1934 on a stock assessment for a closed bank. This judgment was the only debt scheduled. The bankrupt never requested a discharge in the 1935 proceeding, which was dismissed in July, 1936, for the bankrupt's failure to pay the indemnity required by law. It is conceded that this dismissal operates as a denial of discharge. Perlman v. 322 West Seventy-Second Street Co., 2 Cir., 127 F.2d 716; In re Seiden, 2 Cir., 174 F.2d 586.

On June 21, 1938, respondent Warshawsky filed another voluntary petition in bankruptcy in the United States District Court for the Southern District of New York, and was adjudicated a bankrupt the same day. Again the only debt listed was the judgment here in issue. In this second proceeding a discharge was granted on December 14, 1938. In September, 1949, the Superintendent of Banks sold this claim at a judicial sale, and thereafter by means of several assignments it was transferred to appellant Elaine Harris. In February, 1950, she petitioned the United States District Court for the Southern District of New York for an order specifically excepting her assignor's judgment, which she had acquired in 1949, from the operation of the discharge. The District Court denied her petition and she appeals.

■ The appeal thus presents an ancient bankruptcy problem upon which the decisions have not been altogether harmonious. We think, however, the matter has been thoroughly settled for our circuit, for the last time as recently as In re Seiden, supra. The question arises because of the early and settled rule that the denial of a discharge, for whatever reason, becomes *res judicata*, not to be questioned in a later bankruptcy. The first judicial reaction was to construe a discharge granted in a later proceeding as not reaching the debt scheduled in the earlier proceeding. But in 1908, Bluthenthal v. Jones, 208 U.S. 64, 28 S.Ct. 192, 52 L.Ed. 390, cast doubt upon this

course in its holding that a state court, in a collateral proceeding involving a sale upon execution to satisfy the debt, could not question the discharge where granted without objection from a creditor with notice. The court recognized the general rule that the earlier denial operated as *res judicata*, but held that a court was not bound to search the records of other courts to find and give effect to their judgments and that the failure of the creditor to call the matter to the court's attention in the second proceeding left the resulting judgment not subject to collateral attack. Later the Supreme Court held that a court could take judicial notice of the earlier proceedings in the same court and deny or limit the discharge in order to prevent an imposition upon the court and an effort to circumvent the statute by enlarging the time within which application for a discharge might be made. Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193.

■ Following this lead the courts quite generally have limited the discharge so as to exclude the earlier debt from its operation. And, relying on their general power over bankruptcy orders, they have thus restated the effect of a discharge after it has been granted. In re Seiden, supra, was such a case where the application to amend the discharge to except the debt in question was made more than eight years after the original order. In granting the application we cited several of our own earlier decisions, as well as district court cases in point. We also indicated the ground of distinction of Bluthenthal v. Jones—the authority relied on by the District Court in denying the petition herein— as protecting a discharge only from a collateral attack. Since this is not at all a collateral attack, but a direct proceeding for the modification or correction of the original order, see Restatement, Judgments §§ 11(a), 112(f), 1942, the Bluthenthal principle does not apply. The only possible ground of distinction between this case and the Seiden case is that there both bankruptcies were in the Southern District, while here the first was in the Eastern and the second in the Southern District. While some decisions have mentioned as though

of some significance the fact that both proceedings were in the same court, there is no decision holding it of importance and obviously it is not. A denial of a discharge in the Eastern District is equally *res judicata* or binding as one in the Southern District; and while a court acting of its own motion may—at least in theory, though most doubtfully in point of actual fact—know its own records where it would not those of a neighboring court, the point is of no importance once the former decree is known and presented to the court. If it is an imposition on the court which is to be avoided, the force of the principle should not be dissipated when the bankrupt hies himself away to another district. See In re Schindler, D.C.E.D.N.Y., 73 F.Supp. 741, cited by us in the Seiden case; also the well-reasoned argument set forth in Donnelly, The Non-Dischargeability of Dischargeable Debts in Bankruptcy, 36 Va.L. Rev. 185, 207, 208.

■■ There remains, however, a question as to delay in making the application, a delay in the present case until nearly twelve years after the discharge; and this is the matter upon which there still continues a difference of view. The general grant of power to reopen bankruptcy orders for cause shown contains no time limit, Bankruptcy Act § 2, sub. a(8), 11 U.S.C.A. § 11, sub. a(8); Grand Union Equipment Co. v. Lippner, 2 Cir., 167 F.2d 958, 961; and, as the Seiden case points out, this is not a proceeding to set aside a discharge for fraud where the Act, § 15, 11 U.S.C.A. § 33, sets a time limitation of one year. Nevertheless, whether as an application of the doctrine of laches or of the spirit of this statute by analogy, delay has been thought a proper ground for refusal of the application. Ginsberg v. Thomas, 10 Cir., 170 F.2d 1, approved by Donnelly, supra, and by Oglebay, Some Developments in Bankruptcy Law, 23 J.N.A.Ref.Bankr. 70-72. Professor Moore argues to the contrary, even supporting the view that the later "general order of discharge could reasonably be interpreted to exclude by implication the debts scheduled in the prior proceeding." 1 Collier on Bankruptcy ¶14.62, 14th Ed., and 1949 Cum. Supp. As a matter of policy this argument seems likely to be resolved the one way if one thinks the creditor guilty of unreasonable delay which he must explain or justify before receiving the relief, or the other way if the debtor is regarded as imposing upon the court as well as the creditor in seeking to avoid the effects of the earlier decree by new proceedings perhaps quite abroad if he has moved his residence. Here the reason for the creditor's delay, whether adequate or not, is perfectly obvious; no one had sufficient interest or hope in the claim until eventually it came into petitioner's hands. This suggests what we all know that a creditor is not likely to pursue a debtor through several bankruptcies and into other districts unless recovery seems more promising than is customary. Hence a rule upholding the result of the later bankruptcy is a real boon to a debtor assiduous in bankruptcies, if not in payments to his creditors.

■ In such a situation the idea of laches seems at first blush to offer an attractive solvent for the problem; but upon analysis this way of decision becomes less clear cut or forthright. If "the touchstone which converts the mere passage of time into laches is some prejudice, to one of the parties, proved or presumed," In re Stilwell, 2 Cir., 120 F.2d 194, 195, then we must look for some change of position or, baldly put, a prompt spending or squandering of assets by the bankrupt when the discharge is granted. But the bankrupt is the one person who surely knows of the two conflicting decrees; and extravagance, if ever a proper ground of estoppel, might in this instance be thought a sign of guilt and husbandry of resources a course to be commended rather than penalized. And in actual fact there may develop further issues of importance, concerning the laches or at the least unconscionable action of the bankrupt in upsetting an adjudication of perhaps long duration, or the creditor's reliance, in ignorance and/or good faith, upon the original order. Cf. In re Zeiler, D.C.S.D.N.Y., 18 F.Supp. 539. All this may well lead to a morass and make a single definite rule seem preferable.

Be that as it may, we find this issue, too, to have been examined and decided in the

Seiden case. In expressly declining to follow Ginsberg v. Thomas, supra, in so far as it was to the contrary, we said, 174 F.2d at page 587: "But even if laches may be chargeable to the appellee, we do not think that sufficient to defeat this motion. As the Freshman case, supra, shows, the bankrupt abused the process of the court in applying for and obtaining a discharge from which this judgment debt was not excepted and the court should on its own motion correct the discharge whenever it becomes aware that its own records show that the exception should have been made in the first instance. In re Zeiler, D.C.S.D. N.Y., 18 F.Supp. 539." We see no reason to re-examine that rule now, particularly since here no change of position or prejudice is actually claimed or shown.

Order reversed for grant of the order.